UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              No. 18-cr-20256
vs.                                          HON. MARK A. GOLDSMITH

TOMMIE LEE, JR.,

        Defendant.
_____/

## OPINION AND ORDER
## DENYING DEFENDANT TOMMIE LEE, JR.'s MOTION TO SUPPRESS (Dkt. 99)

Defendant Tommie Lee, Jr. is charged with conspiracy to possess with intent to distribute and distribute heroin, in violation of 21 U.S.C. § 841(a)(1). See First Superseding Indictment (Dkt. 79). He has filed a motion to suppress (Dkt. 99) seeking to exclude statements made to authorities on April 8, 2018 and all physical evidence obtained as the result of a search of his vehicle on that same day. The Government filed a response to the motion (Dkt. 103). The parties submitted a set of stipulated facts (Dkt. 123) and oral argument was heard on April 26, 2019 (Dkt. 124). Lee filed a supplemental brief (Dkt. 126), the Government responded (Dkt. 127), and Lee filed a reply brief (Dkt. 129). For the reasons discussed below, the Court denies Lee's motion to suppress.

### I. BACKGROUND

The following facts are taken from the parties' stipulated facts (Dkt. 123), the Government's application for a search warrant attached to the Government's response brief (Dkt. 103-1), and the evidentiary hearing held on April 26, 2019 (Dkt. 124).

This case arises out of the investigation of an illegal drug trafficking organization allegedly run by Defendant Nicolas Medina-Liborio. Brandon Carrier Aff. ("Carrier Aff.") in Support of Search Warrant, Ex. 1 to Gov't Resp., ¶ 4 (Dkt. 103-1). Drug Enforcement Administration

1

("DEA") officers received information that Medina-Liborio was selling kilogram quantities of heroin and methamphetamine. Id. The DEA began investigating Medina-Liborio in November 2017. See Stipulation of Facts ("SoF") at 1 (Dkt. 123). The DEA obtained a search warrant that provided live GPS data from Medina-Liborio's phone and a pen register to capture all phone numbers used in connection with Medina-Liborio's phone. Id. at 2. In February 2018, the DEA arranged to have a confidential source purchase heroin from Medina-Liborio at his Wesson Street house. Id. Shortly thereafter, the confidential source arranged to purchase methamphetamine at the same location. Id. Both times, the confidential source successfully purchased the controlled substances.

In April 2018, the DEA obtained a Title III order to intercept communications to and from Medina-Liborio's phone. Id. at 3. The DEA intercepted a telephone call between Medina-Liborio and an unidentified drug source in Mexico indicating that Medina-Liborio was expecting to receive a package. Id. at 3. Agents were able to identify the package in transit and, with the aid of United States Postal Service Inspectors, discovered that it contained approximately one kilogram of methamphetamine. Id. at 4.

On April 8, 2018, the DEA intercepted a call between Medina-Liborio and an alleged customer stating that he "needed 4." Id. Based on their experience with the investigation, DEA agents interpreted the communication as a request for four kilograms of a controlled substance. Id. Soon after the phone call, Medina-Liborio and two other individuals were observed entering a black Saturn parked at the Wesson Street house. Id. Agents monitored the live tracking information and tracked Medina-Liborio's phone travelling from Detroit to a location somewhere near Dayton, Ohio. Id. at 5. At 7:55 p.m. on April 8, Medina-Liborio returned to the Wesson Street address in the Saturn and carried two luggage bags into his Wesson Street home. Id. Agents

2

immediately sought a search warrant.  Id.  At 8:13 p.m., Medina-Liborio and two other individuals left the Wesson Street address in the Saturn.  Id.  The DEA detained Medina-Liborio and the other individuals away from the residence.  Id.

Magistrate Judge Mona K. Majzoub issued the search warrant at 8:19 p.m.  Search Warrant at PageID.501.  The warrant authorized the following search of the Wesson Street location:

> The search . . . shall include all rooms, attics, crawl spaces, safes, briefcases, storage areas, containers, garages, sheds, carports, storage facilities and containers such as safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans <u>and vehicles located on or near the premises, that are owned or under the control of the occupants of such premises.</u>

Id. at PageID.497 (emphasis added).

At the same time the warrant was issued, Defendant Lee arrived in his car at the Wesson Street house and parked in the driveway.  SoF at 5.  He exited the car and knocked on the front door.  Id.  When there was no answer, Lee returned to his car.  Id.  A few minutes later, a young man appeared on the front porch.  Gov't Resp. at 4.  Lee again left his vehicle and spoke with the young man for ten to fifteen minutes on the porch.  SoF at 5.  DEA Agent Jeffrey Moore, who was surveilling the Wesson Street house, testified that Lee appeared to use a telephone a few times while he was on the porch.  3/28/2019 Hr'g Tr. at 11.

DEA agents, supported by Michigan State Police, arrived at the Wesson Street house to execute the search warrant at 9:00 p.m.  SoF at 5.  A Michigan State Police vehicle blocked the driveway preventing Lee's vehicle from being moved.  Id. at 6.  Lee was handcuffed and patted down for weapons; none were found.  Id.  Agent Moore entered the home with the search warrant execution team.  Id.  He observed firearms, $14,000 in cash, the two luggage bags, and over twenty-five kilograms of suspected controlled substances.  Id.

Because agents suspected that Lee was involved in the criminal activity, Moore left the residence (while the search continued) to speak with him. Id. at 6-7. Moore did not advise Lee of his rights under Miranda before he began asking questions. Id. at 7. Moore testified that Lee was standing handcuffed behind his back at the base of the porch stairs when he approached him. 3/28/2019 Hr'g Tr. at 12. Moore asked Lee for his name and asked what he was doing at the location. Id. at 12-13. Lee identified himself and said that he was looking for a mechanic for his car. Id. Moore did not observe anything at the Wesson Street address that appeared to be related to car repair. SoF at 7. While at the Wesson Street address, Lee did not inspect his car, open the hood, or do anything that appeared to be related to an automobile repair. Id. at 8.

The investigating officers had little, if any, information related to Lee at the time of the search. Agents saw Lee approach the Wesson Street residence, but he did not enter the house. Id. at 7. He was not observed exchanging any items with the young man on the porch. Id. And there had been no phone calls or text messages intercepted between Lee and Medina-Liborio by DEA agents. 3/28/2019 Hr'g Tr. at 18.

After questioning Lee, a task-force officer walked a certified narcotics detection dog, Thor, around Lee's car. SoF at 8. Thor alerted to the presence of the odor of narcotics near the rear hatch. Id.; 3/28/2019 Hr'g Tr. at 14, 28-29. Without obtaining a search warrant, agents allowed Thor inside the vehicle where it alerted near the rear seat. SoF at 8. State troopers then searched Lee's vehicle and removed the passenger seat in the rear of the vehicle to reveal an empty hidden compartment, which they suspected was used to transport controlled substances. SoF at 8. Lee was then formally arrested. Id.

## II. ANALYSIS

Lee advances two primary arguments: (1) he argues that his un-Mirandized statements must be suppressed; and (2) that any physical evidence resulting from the warrantless search of his car must be suppressed. The Government initially argued that the search of Lee's vehicle was authorized under the search warrant. In the stipulation of facts, however, the Government concedes that Lee's vehicle was searched without a warrant. SoF at 8. The Government now argues that Agent Moore was not required to provide Miranda warnings to Lee and that the search of his vehicle was warranted under the automobile exception. The Court will take each argument in turn.

### A. Un-Mirandized Statements

Lee argues that his detention was not reasonable and that his statements to Agent Moore must be suppressed because he was not provided with Miranda warnings. Mot. at 19-20. The Government disagrees, citing Berkemer v. McCarty, 468 U.S. 420 (1984). Resp. at 11-12. The Government has the better part of the argument.

Lee argues that his detention was not supported by a reasonable suspicion that he was engaged in criminal activity. See Mot. at 10-19 (citing Terry v. Ohio, 392 U.S. 1 (1968)). An officer may briefly detain a person under Terry only if he or she "has reasonable, articulable suspicion" that the person seized "has been, is, or is about to be engaged in criminal activity." United States v. Place, 462 U.S. 696, 702 (1983). However, Lee's initial detention was incident to the execution of a valid search warrant under the authority of Michigan v. Summers, 452 U.S. 692 (1981). The investigatory stop authorized under Summers is akin to Terry, but it involves somewhat different considerations. See United States v. Swanson, 341 F.3d 524, 528 (6th Cir. 2003) (analogizing the investigatory stop under Summers to a Terry stop). Therefore, Lee's

reliance on vehicle-stop cases under Terry misses the mark. Mot. at 10-19 (citing United States v. See, 574 F.3d 309 (6th Cir. 2009); United States v. Spinner, 475 F.3d 356 (D.C. Cir. 2007), United States v. Wall, 807 F. Supp. 1271 (E.D. Mich. 1992)).

Law enforcement officers have a limited authority to detain occupants of premises while executing a search warrant. Summers, 452 U.S. at 705. Such detentions are reasonable to prevent "flight in the event that incriminating evidence is found," to minimize "the risk of harm to the officers," and to facilitate "the orderly completion of the search." Id. at 702-703. Unlike a stop allowed under Terry, however, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Summers, 452 U.S. at 705, n.19).

The Sixth Circuit has extended Summers to include individuals who, like Lee, were not occupants of a premises when the execution of the warrant was initiated. See United States v. Bohannon, 225 F.3d 615, 617 (6th Cir. 2000). In Bohannon, after the execution of a search warrant at a trailer residence suspected of being a methamphetamine laboratory, a car arrived at the location. Id. at 616-617. Two men exited the vehicle and approached the trailer. Id. at 617. Police officers stopped and searched the two men and recovered quantities of methamphetamine and a firearm. Id. The Bohannon panel noted that the Sixth Circuit had previously held "detention of the defendant, who did not live at the residence that was being searched, was constitutional because two of the [Summers] justifications for detaining residents still existed," specifically the detention was necessary to ensure the safety of officers and to prevent flight in the event incriminating evidence is found. Id. at 617 (citing United States v. Fountain, 2 F.3d 656 (6th Cir. 1993)). The

6

Bohannon panel found that the detention was constitutional, because the officers could reasonably infer that customers or distributors would arrive at the methamphetamine laboratory. Id.

Here, the DEA task force was executing a search warrant based on probable cause that the Wesson Street address was being used to sell narcotics and that a large shipment of narcotics was recently delivered to the address. The valid search warrant of the Wesson Street address alone justifies Lee's detention. See Mena, 544 U.S. at 98 (stating that the defendant's "detention for the duration of the search was reasonable under Summers because a warrant existed to search [the premises] and she was an occupant of that address at the time of the search"). And, as in Bohannon, the officers could reasonably infer that Lee was at the Wesson Street address to engage in the purchase or distribution of narcotics. His detention, therefore, was justified by officer safety and the need to prevent his flight in the event incriminating evidence was found during the search. Therefore, Lee's initial seizure incident to the execution of the search warrant was reasonable and not a violation of his Fourth Amendment rights.

Additionally, while executing a search warrant, law enforcement officers are allowed to ask a moderate number of investigatory questions of suspects without triggering the need to provide Miranda warnings. Miranda warnings serve to protect a suspect's Fifth Amendment right against self-incrimination, by requiring law enforcement officers to advise individuals in "custody" of their Fifth Amendment rights. Stansbury v. California, 511 U.S. 318, 322 (1994) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). The concept of "custody" is defined to mean either a formal arrest or circumstances in which the suspect has otherwise been "deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444.

Even though Lee was initially seized within the meaning of the Fourth Amendment, that seizure did not constitute the "custody" necessary to trigger Miranda warnings. United States v.

7

Dixon, 787 F.2d 593 (6th Cir. 1986). When an individual is lawfully detained during the execution of a search warrant, the detention is analogous to a Terry stop, during which limited questioning without Miranda warnings is allowed. Swanson, 341 F.3d at 528. Under Terry, an "officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Id. "The very nature of a Terry stop means that a detainee is not free to leave during the investigation, yet is not entitled to Miranda rights." Id. (Berkemer, 468 U.S. at 439-441). "Where an individual has been detained incident to a search warrant, and officers' questioning stays within the bounds of questioning permitted during a Terry stop, Miranda rights are not required." United States v. Davis, 530 F.3d 1069, 1081 (9th Cir. 2008).

Agent Moore's questions stayed well within the bounds of questioning permitted by Terry. Moore was part of the task force investigating the Wesson Street address. He knew that the house was likely used to sell narcotics based on confidential sources making controlled drug purchases at the location. Lee arrived at the Wesson Street address minutes after Medina-Liborio returned from his trip to Ohio carrying two pieces of luggage suspected to contain large amounts of narcotics. That suspicion was validated when the DEA task force entered the Wesson Street residence and found firearms, $14,000 in cash, and twenty-five kilograms of suspected narcotics. Within ten minutes, Moore left the residence to ask Lee questions to confirm or dispel his suspicion that Lee was somehow involved with the drug operation. Moore's questions were the two quintessential Terry questions: Who are you and what are you doing here? See Swanson, 341 F.3d at 528. Both questions are clearly allowed under Terry, and no Miranda warnings were required. Accordingly, Lee's motion to suppress must be denied with respect to statements made to Agent Moore.

## B. The Automobile Exception

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 454 (1971) (internal marks and citations omitted). One such exception, the automobile exception, has been invoked by the Government in this case to justify the search of Lee's car.

The Government argues that all that is required to invoke the automobile exception is probable cause to believe that a vehicle contains evidence of a crime. Gov't Supp. Br. at 3. By contrast, Lee argues that to invoke the automobile exception to the Fourth Amendment's warrant requirement, there must be exigent circumstances. Def. Supp. Br. at 3. Indeed, the Supreme Court has said that the general rule is that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." Chambers v. Maroney, 399 U.S. 42, 51 (1970). However, as explained more fully below, exigent circumstances are no longer a requirement for the automobile exception. See California v. Carney, 471 U.S. 386, 391 (1985). Because only probable cause must be satisfied in an automobile-related search – which requirement is satisfied here – the search of Lee's car was not unconstitutional.

### 1. Exigent Circumstances

Exigency was the initial justification for the automobile exception. The Supreme Court first addressed the automobile exception in Carroll v. United States, 267 U.S. 132 (1925). In Carroll, officers stopped a car traveling between Detroit and Grand Rapids based on probable cause that bootleggers were transporting illegal liquor in violation of the National Prohibition Act. Id. at 161. The officers conducted a warrantless search of the vehicle and found illegal liquor hidden in the vehicle's upholstery. Id. at 174. The Supreme Court found that the warrantless search did not violate the Fourth Amendment because of exigent circumstances:

> [T]he Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

Id. at 153. In other words, Carroll held "a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." Chambers, 399 U.S. at 51.

The automobile exception has evolved and expanded since Carroll. In South Dakota v. Opperman, the Supreme Court offered a new rationale for the automobile exception. 428 U.S. 364, 367 (1976). It explained that the distinction between structures and automobiles is twofold. First, it recognized the traditional rationale that "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. Id. (citing Carroll, 267 U.S. at 153-154). Second, the Court said that "less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." Id. (analogizing

to administrative searches under Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523 (1967)). Subsequent to Opperman, there was some confusion as to whether exigent circumstances were still a prerequisite to invoking the automobile exception. However, the Supreme Court resolved any confusion in Pennsylvania v. Labron, 518 U.S. 938 (1996) (per curium) and subsequent cases.

In Labron, the Court reversed the Pennsylvania Supreme Court's holding that the automobile exception "permitting warrantless searches of automobiles is limited to cases where unforeseen circumstances involving the search of an automobile [are] coupled with the presence of probable cause." Id. at 940 (internal marks omitted). The Court rejected the requirement of "unforeseen circumstances" (i.e. exigent circumstances) and clarified that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." Id. In a nearly identical case three years later, the Court stressed that "the 'automobile exception' has no separate exigency requirement." Maryland v. Dyson, 527 U.S. 465, 466 (1999) (per curium). The Court said that "the Court of Special Appeals found that there was 'abundant probable cause' that the car contained contraband. This finding alone satisfies the automobile exception to the Fourth Amendment's warrant requirement, a conclusion correctly reached by the trial court when it denied respondent's motion to suppress." Id. at 467.

### 2. The Sixth Circuit's Treatment of the Automobile Exception

Even before Lebron and Dyson, the Sixth Circuit made clear that no exigent circumstances were necessary to search a vehicle where there was probable cause to do so. In United States v. Hofstatter, a panel upheld a warrantless search of a vehicle at a residence where DEA agents obtained a search warrant, because there was probable cause to believe the vehicle contained

contraband. 8 F.3d 316, 322 (6th Cir. 1993). The Hofstatter panel noted that "[a]lthough the government might have had time to secure a warrant to search the automobile, there was no requirement that it do so" under the automobile exception. 8 F.3d at 322.

Sixth Circuit cases subsequent to Hofstatter confirm that exigent circumstances are not necessary to invoke the automobile exception. See United States v. Graham, 275 F.3d 490, 510 (6th Cir. 2001) ("[A] vehicle may be searched, without any indication of exigency, if the searching officers have probable cause to believe that it contains instrumentalities or evidence of the crime."); see also United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007) (same); United States v. Galaviz, 645 F.3d 347, 355 (6th Cir. 2011) ("Recent cases have clarified that the automobile exception need not rest on an independent showing of exigency, because even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." (internal marks and citations omitted)).

Lee argues that the preceding cases predate an important decision in this area, United States v. Jones, 565 U.S. 400 (2012). Lee argues that Jones held that vehicles are "effects" under the Fourth Amendment and that the Jones conviction was overturned because the Government conducted a search of a car without a warrant. However, neither of Lee's arguments is persuasive, and Lee's reliance on Jones is misplaced.

In Jones, the Supreme Court held that attaching a GPS device to a vehicle constitutes a search within the meaning of the Fourth Amendment. Id. at 404. Lee first argues, without explanation, "that the Fourth Amendment's protections extends to automobiles as 'effects.'" Def. Supp. Resp. at 3 (citing Jones, 565 U.S. at 404). But automobiles have long been held "effects" under the Fourth Amendment. See United States v. Chadwick, 433 U.S. 1, 12 (1977), abrogated

on other grounds by California v. Acevedo, 500 U.S. 565 (1991) ("It is true that, like the footlocker in issue here, automobiles are 'effects' under the Fourth Amendment, and searches and seizures of automobiles are therefore subject to the constitutional standard of reasonableness."). Jones has not changed the Fourth Amendment legal landscape simply because it noted that vehicles are recognized as "effects."

Lee further argues that "[i]n Jones, the Court affirmed reversal of a conviction because law enforcement 'physically occupied private property for the purpose of obtaining information' when law enforcement placed a GPS tracking device on a vehicle one day after the warrant authorizing the GPS tracking device expired." Id. (quoting Jones, 565 U.S. at 404-405). Lee's characterization of Jones is correct, but he fails to acknowledge that the Court declined to consider the alternative argument "that even if the attachment and use of the device was a search, it was reasonable – and thus lawful – under the Fourth Amendment because 'officers had reasonable suspicion, and indeed probable cause, to believe that [Jones] was a leader in a large-scale cocaine distribution conspiracy.'" Jones, 565 U.S. at 413 (citing United States v. Jones, 625 F.3d 766, 767 (D.C. Cir. 2010) (denying rehearing en banc) (declining to consider the automobile exception because it was not raised before the district court)). Jones simply has no application to Lee's case.

Additionally, even after Jones, the Sixth Circuit has continued to find that the automobile exception applicable in cases similar to Lee's. For example, in United States v. Spillman, after making controlled narcotics purchases from two defendants, police officers obtained a warrant to search the defendants' home and vehicles. No. 16-6602, 2018 WL 2046137, at *1 (6th Cir. Mar. 19, 2018). The warrant was subsequently executed, and incriminating drug evidence was found in the home and the vehicles. Id. The district court found the search warrant defective, but nonetheless found the vehicle searches valid under the automobile exception and denied the

defendants' motion to suppress. Id. The Sixth Circuit affirmed the district court and explained that "no special exigency is required to conduct a warrantless search of an automobile when the car is mobile and the searching officer has probable cause to believe that fruits of a crime may be present in the automobile." Id. at *2 (citing Graham, 275 F.3d at 509-510, and Dyson, 527 U.S. at 466); see also United States v. Banks, 684 F. App'x 531, 533 (6th Cir. 2017) (citing Dyson and upholding warrantless search of a truck based on probable cause that it contained marijuana and a firearm); United States v. Lyons, 687 F.3d 754, 770 (6th Cir. 2012) ("The automobile exception applies even in nonexigent circumstances and even when the officer's decision to stop the vehicle was pretextual.").

All that was required in this case to search Lee's vehicle was probable cause. Although the DEA task force certainly had time to obtain a warrant to search Lee's car, there is no requirement that it must do so. See Hofstatter, 8 F.3d at 322. Therefore, the only question to answer is whether the officers had probable cause to search Lee's vehicle. As explained below, they did.

### 3. Probable Cause

Lee argues that, under the circumstances, the DEA did not have reasonable suspicion, let alone probable cause, to search his vehicle. Mot. at 10-19. The Government disagrees and argues that under the circumstances – close proximity to heightened drug activity, waiting for forty minutes at the residence in a running car, looking nervous – probable cause existed to search Lee's car. Resp. at 13. Additionally, the Government argues that Thor's positive alert to the presence of the odor of narcotics independently provides probable cause to search Lee's vehicle. Id. at 14. Even if the circumstances surrounding the search of Lee's car provide less than probable cause for the search, Thor's alert independently provides probable cause for the search.

An alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle. United States v. Diaz, 25 F.3d 392, 393-394 (6th Cir. 1994) (citing United States v. Knox, 839 F.2d 285, 294 n. 4 (6th Cir. 1988), cert. denied, 490 U.S. 1019 (1989)). "It is well-established that 'a canine sniff is not a search within the meaning of the Fourth Amendment,' but 'the canine team must lawfully be present at the location where the sniff occurs.'" United States v. Sharp, 689 F.3d 616, 618 (6th Cir. 2012) (quoting United States v. Reed, 141 F.3d 644, 650 (6th Cir. 1998)).

Lee does not challenge Thor's training or even address Thor's alert as a basis for probable cause. It is undisputed that Thor alerted to the presence of a controlled substance in Lee's vehicle. Additionally, the Court finds that the DEA task force was lawfully present at the Wesson Street address, because it was there under the authority of a search warrant issued by a neutral magistrate. Nothing more was required to establish probable cause to search Lee's vehicle. Accordingly, Lee's motion to suppress must be denied as to the physical evidence obtained by the warrantless search of his vehicle.

## III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Lee's motion to suppress (Dkt. 99).

SO ORDERED.

Dated: June 14, 2019                          s/Mark A. Goldsmith
  Detroit, Michigan                  MARK A. GOLDSMITH
                                        United States District Judge