```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5                    Plaintiff,

 6   -v-                                    Case No. 18-cr-20256-4

 7   D-4:  TOMMIE LEE, JR.,

 8                    Defendant.
     _____/
 9

10                       GUILTY PLEA HEARING

11             BEFORE HONORABLE MARK A. GOLDSMITH

12         Detroit, Michigan, Friday, January 31st, 2020.

13

14   APPEARANCES:

15   FOR THE PLAINTIFF:        TIMOTHY P. MCDONALD
                               JOHN N. O'BRIEN, II
16                             U.S. DEPARTMENT OF JUSTICE
                               211 West Fort Street
17                             Suite 2001
                               Detroit, MI 48226
18

19   FOR THE DEFENDANT:        JAMES C. HOWARTH
                               615 Griswold
20                             Suite 820
                               Detroit, MI  48226
21

22

23

24   David B. Yarbrough, CSR, RMR, FCRR
     Official Court Reporter
25   (313) 234-2619
```

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE




EXHIBITS

NONE

```
 1          Detroit, Michigan.
 2          Friday, January 31st, 2020.
 3          At or about 11:33 a.m.
 4                     --    ---    --
 5          THE CLERK OF THE COURT:  Please rise.  The United
 6  States District Court for the Eastern District of Michigan is
 7  now in session, the Honorable Mark Goldsmith presiding.  You
 8  may be seated.
 9          The Court calls case number 18-20256, United States
10  of America versus Tommie Lee, Jr.  Counsel, please place your
11  appearance on the record.
12          MR. MCDONALD:  Good morning, your Honor.  Tim
13  McDonald on behalf of the United States.  John O'Brien also
14  here on behalf of the United States.
15          MR. O'BRIEN:  Good morning, Judge.
16          THE COURT:  Good morning.
17          MR. HOWARTH:  Good morning, your Honor.  James
18  Howarth appearing for the defendant, Tommie Lee, Jr., who's
19  present at my left.
20          THE DEFENDANT:  Good morning, your Honor.
21          THE COURT:  Okay.  Good morning.  What are we going
22  to do this morning?
23          MR. MCDONALD:  Judge, my understanding after talking
24  with Mr. Howarth that the defendant will be tendering a plea to
25  a -- with a Rule 11 Plea Agreement.  We've provided the
```

4

1    original plea agreement that Mr. Lee has signed to the Court.

2            MR. HOWARTH:  That is correct, your Honor, and your

3    Honor, just to state as to why we waited until today, there

4    were developments yesterday which caused Mr. Lee to

5    dramatically change his feelings about this case and he has

6    been fully advised of his rights and wishes to tender his plea

7    today.

8            THE COURT:  Okay.

9            MR. O'BRIEN:  And if I might add to that, your Honor,

10   the, given that the information came to us late and we provided

11   that to Mr. Lee.  Although there was a second-superseding

12   indictment, in almost all substantial respects the plea that we

13   offered originally is the same without additional exposure on

14   his part.

15           MR. HOWARTH:  I agree to that, your Honor.

16           THE COURT:  Okay.  All right, well, let's have Mr.

17   Lee sworn in then.

18           THE CLERK OF THE COURT:  Please raise your right

19   hand.  Do you solemnly swear or affirm under penalty of perjury

20   that the testimony you're about to give in the cause now

21   pending before this Court shall be the truth, the whole truth

22   and nothing but the truth?  If so, state I do.

23           THE DEFENDANT:  I do.

24           THE COURT:  All right.  Everyone can have a seat.

25   Mr. Lee, if you will bring that microphone closer to you, tell

1    us your full name, please?

2         THE DEFENDANT:  Tommie Lee, Jr.

3         THE COURT:  Mr. Lee, I'm going to tell you a few

4    things before we get into the heart of the plea-taking.  First,

5    you've just taken an oath to tell the truth so you have to give

6    me truthful answers to my questions.  If you give me answers

7    that are intentionally untrue, you could be prosecuted for

8    perjury and if convicted of that, you would be sentenced for

9    that offense separately from any sentence that you may receive

10   for what brings you to court today.  Do you understand me?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Second preliminary matter I want to

13   advise you about is that you do have an attorney seated right

14   next to you.  You're free to consult with him as much as you

15   like during this proceeding this morning and if you need some

16   private area in which to meet with him, we'll make that

17   available to you as well.  Do you understand?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  And as a final preliminary matter I want

20   to stress that you're under no obligation to plead guilty even

21   though it's been announced here that that is your intention.

22   If you decide as this plea-taking proceeds this morning that

23   you do not want to plead guilty, just let me know that.  We'll

24   stop the plea-taking, your current plea of not guilty would

25   remain in effect and you would be brought to trial.  Do you

1  understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  What is your date of birth?

4          THE DEFENDANT:  December 2nd, 1960.

5          THE COURT:  Can you read, write and understand the

6  English language?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Can you hear and understand me?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Could you hear and understand your

11  attorney?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you satisfied with the advice he's

14  given you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you currently under the influence of

17  any drugs, alcohol or medication?

18          THE DEFENDANT:  No.

19          THE COURT:  Have you ever been treated for addiction

20  to any of those items?

21          THE DEFENDANT:  No.

22          THE COURT:  How far did you get in school?

23          THE DEFENDANT:  High school, G.E.D.

24          THE COURT:  You understand that you're charged in

25  this case with conspiracy to possess with intent to distribute

1    and distribute controlled substances?  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And under the statute there's a mandatory

4    minimum term of imprisonment of 10 years.  Do you understand

5    that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand that you could also be

8    sentenced up to life in prison?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand you could be fined up

11   to 10 million dollars?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that with respect to

14   supervised release, I would have to sentence you to at least

15   five years and possibly up to life on supervised release?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Just so we're clear, supervised release

18   has replaced parole in our federal criminal justice system.

19   Supervised release means after you've served your prison term,

20   you are released back to the community.  You have certain rules

21   that you have to follow and if you violate any of those rules,

22   you can be sent back to prison to serve additional time.  Do

23   you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Have you discussed your case thoroughly

1    with your attorney?

2             THE DEFENDANT:  Yes, your Honor.

3             THE COURT:  Have you discussed the issue of whether

4    to plead guilty in this case?

5             THE DEFENDANT:  Yes.

6             THE COURT:  Have you asked him all the questions you

7    wanted to on that subject?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  Did he answer all your questions to your

10   satisfaction?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Do you need any more time now to talk to

13   him about your decision whether to plead guilty?

14            THE DEFENDANT:  No.

15            THE COURT:  I've been given a document called a Rule

16   11 Plea Agreement.  I believe you have a copy at your table; is

17   that right?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Do you understand that this document is

20   the agreement between you and the government regarding your

21   decision to plead guilty in this case?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  Did you read this document?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Did you go over it with your attorney?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Did you ask him all the questions you

3    wanted to about this document?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Did he answer all of those questions to

6    your satisfaction?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Do you need any more time now to talk to

9    him about this Rule 11 Plea Agreement?

10          THE DEFENDANT:  No.

11          THE COURT:  I see on page 12 a signature line for

12   Tommie Lee, Jr., and a signature.  Did you sign it?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you sign it after you had read it?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Right above your signature there's a

17   statement that says by signing below, defendant acknowledges

18   that he has read or been read this entire document, understands

19   it and agrees to its terms.  He also acknowledges that he is

20   satisfied with his attorney's advice and representation.

21   Defendant agrees that he has had a full and complete

22   opportunity to confer with his lawyer and has had all of his

23   questions answered by his lawyer.  Are all of those statements

24   true?

25          THE DEFENDANT:  Yes, your Honor.

1       THE COURT:  Did anybody force you or threaten you in

2   any way to sign this document?

3       THE DEFENDANT:  No.

4       THE COURT:  Anybody force or threaten any members of

5   your family to get you to sign this document?

6       THE DEFENDANT:  No.

7       THE COURT:  Did anybody make you any promises to get

8   you to sign this document other than the promises that are

9   contained in the agreement?

10      THE DEFENDANT:  No.

11      THE COURT:  Did you sign this out of your free will?

12      THE DEFENDANT:  Yes, your Honor.

13      THE COURT:  I'm going to go over the document with

14  you and again if you have any questions at any time, you can

15  ask your lawyer.  The first provision which appears on page two

16  says that you're going to plead guilty to count one of the

17  second-superseding indictment which charges you with conspiracy

18  to possess with intent to distribute and distribute controlled

19  substances which is a violation of a statute known at 21 United

20  States Code, Section 841 and 846.  Do you understand that?

21      THE DEFENDANT:  Yes, your Honor.

22      THE COURT:  Now there are different parts to this

23  offense and they're set out under the section there entitled

24  elements of offense.  These are the different parts of the

25  crime that the government would have to prove against you

1    beyond a reasonable doubt.

2         So the parts of the crime are as follows; that you

3    knowingly and intentionally entered into an agreement with

4    others and the purpose of the agreement was to distribute one

5    or more controlled substances, specifically one kilogram or

6    more of heroin.  Do you understand that?

7         THE DEFENDANT:  Yes.

8         THE COURT:  Do you think the government can prove

9    those elements against you beyond a reasonable doubt?

10        THE DEFENDANT:  Do I think the government can --

11        THE COURT:  Do you think the government can prove

12   that against you beyond a reasonable doubt?

13        MR. HOWARTH:  He's just asking if the government can

14   make out the case against you beyond a reasonable doubt which

15   was the question.

16        THE DEFENDANT:  Yes.

17        THE COURT:  Now underneath that section is a section

18   entitled Factual Basis For Guilty Plea and it's on page two and

19   carries over to pages three and four.  Did you read this

20   section carefully?

21        THE DEFENDANT:  What is this?

22        MR. HOWARTH:  This is what happened.

23        (Pause)

24        MR. HOWARTH:  I think he's ready, your Honor.

25        THE COURT:  Mr. Lee, my question is did you read this

1    section entitled factual basis for guilty plea?  Did you read

2    that carefully?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Okay.  Are all the statements in that

5    section true?

6           THE DEFENDANT:  Well, I didn't know what, what the

7    amount or what, is he asking the --

8           MR. HOWARTH:  He's only talking to, your Honor, I

9    think his knowledge of the exact amount of the drugs.

10           THE COURT:  All right.  Well, putting aside right now

11    for the moment the exact amount of drugs, is everything else in

12    this section true?

13           THE DEFENDANT:  I never knew his name.

14           MR. HOWARTH:  Your Honor, I'm sorry.  We did this

15    somewhat hurriedly, but --

16           THE COURT:  All right, well, I don't want anything

17    being done hurriedly when it comes to a guilty plea.  If you

18    need more time, I can call a recess and you can go over this

19    with your client.  I'm going to be here much of the day.  I'll

20    be happy to take this matter up at another time today, so I'm

21    happy to call a recess now if you'd like me to do that.

22           MR. HOWARTH:  I think the small problem I believe was

23    that Mr. Lee did not know the name of Mr. Medina-Liborio, but

24    he knew that he was to meet a man who was of Mexican heritage

25    and did not know his name, but that turns out to have been

1    Mr. Medina-Liborio and he admits to that.  He was only

2    concerned with the fact --

3            THE DEFENDANT:  Right.

4            MR. HOWARTH:  -- that he did not know his name.

5            THE COURT:  All right.  Well, maybe we better have an

6    attorney and I don't know if it should be a government attorney

7    or Mr. Howarth, but I think somebody better ask questions of

8    the defendant to establish a factual basis.  Do you need more

9    time to go over this with your client?

10          MR. HOWARTH:  I think I can establish that, your

11    Honor.  I'd be happy to voir dire him.

12          THE COURT:  All right.  Go ahead.

13          MR. HOWARTH:  Mr. Lee, the date that this happened

14    was April the 8th, 2018.  Do you remember that day?

15          THE DEFENDANT:  Yes.

16          MR. HOWARTH:  And did you go to a house in Detroit on

17    that day in a car that was titled in your name?

18          THE DEFENDANT:  Yes.

19          MR. HOWARTH:  And it turns out that that car had what

20    is called a trap under the front seat which is generally used

21    in narcotics to transport narcotics.

22          THE DEFENDANT:  Yes.

23          MR. HOWARTH:  You went to that house in Detroit

24    knowing that you were going to transport narcotics from that

25    house back to some other place in Detroit.  Is that true?

1           THE DEFENDANT:  Yes.

2           MR. HOWARTH:  You didn't know the exact weight of the

3    narcotics; am I right?

4           THE DEFENDANT:  Right.

5           MR. HOWARTH:  And you did at some time have an

6    understanding with a person who it now turns out is

7    Mr. Medina-Liborio, but you didn't know his name as of that

8    date.  Am I correct?

9           THE DEFENDANT:  Right, yes.

10          MR. HOWARTH:  And the understanding that you had with

11   him was that on that date you would pick up the drugs and you

12   would take them to some place to deliver them to somebody else.

13   Am I right?

14          THE DEFENDANT:  Yes.

15          MR. HOWARTH:  And you knew that those drugs were then

16   going to be distributed further in the course of narcotics

17   sales; is that correct?

18          THE DEFENDANT:  Well, I don't know, you know --

19          MR. HOWARTH:  But you knew you were going to deliver

20   them to someone else?

21          THE DEFENDANT:  Yes.  I wasn't part of, you know.

22          THE COURT:  Do you have questions?

23          MR. O'BRIEN:  If I may?

24          THE COURT:  Go ahead.

25          MR. O'BRIEN:  Mr. Lee, as well, the -- you have

```
 1    learned -- you don't have to stand up, sir.  You have learned
 2    during the course of the case that there was numerous kilos of
 3    drugs at Mr. Medina-Liborio's house; is that correct?
 4               THE DEFENDANT:  Yes.
 5               MR. O'BRIEN:  Somewhere in the neighborhood of 15 or
 6    20?
 7               THE DEFENDANT:  Yes.
 8               MR. O'BRIEN:  But you don't know how many of those
 9    you were going to pick up or were responsible for; is that
10    correct?
11               THE DEFENDANT:  Right, yes.
12               MR. O'BRIEN:  But we agree that it was at least one
13    kilogram, but no more than three.
14               THE DEFENDANT:  Okay.
15               MR. O'BRIEN:  Is that correct?
16               THE DEFENDANT:  Yes.
17               MR. O'BRIEN:  And the trap in your car would have
18    held that much, that volume of drugs.  Is that true, sir?
19               THE DEFENDANT:  I don't know what the size --
20               MR. O'BRIEN:  If it would have fit neatly in or --
21               THE DEFENDANT:  I don't know how -- I never seen that
22    device, you know?  Like I say, even though the car was in my
23    name, it was not in my possession at any time other than the
24    time I went over there.
25               MR. O'BRIEN:  Just that day?
```

1    THE DEFENDANT:  Yeah.  It was like I got in a car in
2    somebody else's name and they --
3    MR. O'BRIEN:  So you were just going to throw them in
4    the car?  Whatever you got you were just going to throw it in
5    the car, where ever?
6    THE DEFENDANT:  I mean, you know --
7    MR. O'BRIEN:  Take it away?
8    THE DEFENDANT:  Yes, I mean, you know.
9    MR. O'BRIEN:  Okay, thank you.
10   THE DEFENDANT:  You mean in terms of --
11   MR. HOWARTH:  I suggest, your Honor, that that would
12   be a sufficient basis for the charge of conspiracy with intent
13   to deliver.
14   THE COURT:  Is the government satisfied with that?
15   MR. O'BRIEN:  I am.  I believe that Mr. Howarth and
16   I, your Honor, would agree that later testing revealed the
17   nature of the substance as being cocaine and fentanyl and
18   methamphetamine, but, umm, aid -- and heroin, but not that --
19   but we accept Mr. Lee's statements as a sufficient factual
20   basis.
21   THE COURT:  All right and do you agree, Mr. Howarth?
22   MR. HOWARTH:  I do, your Honor.
23   THE COURT:  Okay.  Mr. Lee, this plea agreement talks
24   about sentencing so I want to go over our sentencing procedure
25   with you.  If I accept your guilty plea, I'm going to order

1    that a presentence investigation report be prepared.  You and

2    your attorney will have input into the report.  If your

3    attorney has any objections, I'll be ruling on those at a later

4    time.

5              I'm going to also set a sentencing hearing date.  At

6    that hearing, your attorney will speak on your behalf.  You can

7    address the Court yourself if you want to.  I'll also hear from

8    the attorney for the government.  Based on what everyone tells

9    me at that hearing and based on what's in the presentence

10   investigation report, I'm going to sentence you that day.  Do

11   you understand?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  I'm going to take into account everything

14   the law says I'm supposed to take into account which includes

15   sentencing guidelines.  Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Have you gone over sentencing guidelines

18   with your attorney?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  The Rule 11 Plea Agreement says that

21   there are no sentencing guideline disputes between you and the

22   government and that you and the government agree that your

23   sentencing guideline range would be 87 months to 108 months

24   except for the fact that there's a statutory minimum of 10

25   years so that your effective guideline range is 120 months.  Do

1    you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  The Rule 11 Plea Agreement provides that

4    your guideline range can go up based on certain things.  First,

5    if it turns out you have more criminal history than what is

6    reflected on the worksheets attached to the agreement, that

7    could cause your guideline range to go up.  Do you understand

8    that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Your guideline range can also go up based

11   on things that you do after this proceeding concludes today.

12   If after pleading guilty you make a false statement to

13   probation or withhold information or if you commit a new

14   offense or obstruct justice or otherwise demonstrate a lack of

15   acceptance of responsibility, any of those things could cause

16   your guideline range to go up beyond 87 to 108 months and then

17   that would become the new agreed range between you and the

18   government.  Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  This agreement says that if I accept it,

21   your sentence will not be higher than the top of the guideline

22   range allowed for under this agreement.  Do you understand

23   that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Now if I decided to impose a higher

1    sentence than what's allowed under the agreement, I would tell

2    you that at sentencing and then you would have a decision to

3    make.  You could decide to withdraw your guilty plea and go to

4    trial or you could decide that you wanted to maintain your

5    guilty plea, but in that event, I could sentence you to

6    whatever the law allows even if that's greater than what is

7    allowed under this agreement.  Do you understand that?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  The agreement says that I have to

10   sentence you to at least five years on the supervised release,

11   order the mandatory special assessment of 100 dollars and that

12   because there's no agreement regarding fines, I could fine you

13   up to 10 million dollars.  Do you understand all of that?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  The agreement also provides for

16   forfeiture.  That means giving up property right interests in

17   certain property and it's defined in the agreement as property

18   that constituting or derived from proceeds that you obtained

19   directly or indirectly as a result of the criminal offense; any

20   property that you used or intended would be used in any manner

21   to commit or facilitate the commission of this crime.  Do you

22   understand all of that?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  The agreement provides for a limited

25   right to withdraw from this agreement.  I mentioned the way you

```
 1   could withdraw from the agreement and that's the situation

 2   where I would decide to impose a higher sentence.  I've gone

 3   over that with you.  The government may withdraw if I find that

 4   the correct guideline range is different than what is set out

 5   in the agreement.  Do you understand that?

 6            THE DEFENDANT:  Yes, your Honor.

 7            THE COURT:  The agreement provides for appeal waiver

 8   meaning giving up appeal rights.  You're giving up your right

 9   to appeal your conviction on any grounds.  Do you understand

10   that?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  You're also giving up your right to

13   appeal your sentence so long as your sentence does not exceed

14   120 months.  Do you understand that?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  If your sentence is at least 120 months,

17   then the government is giving up its right to appeal your

18   sentence.  Do you understand that?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Now you are not giving up under any

21   circumstances your right to claim ineffective assistance of

22   counsel.  Do you understand that?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  Do you understand that what you're

25   pleading guilty to is a felony?
```

```
 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  A person who is convicted of a felony,

 3      whether after a guilty plea or after a trial, loses valuable

 4      civil rights.  You may not have these civil rights now because

 5      of your criminal history, but I nonetheless have to tell you

 6      that a person convicted of a felony loses the right to vote, to

 7      hold public office, to sit on a jury or to own or possess

 8      firearms.  Do you understand that?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  Such a person also loses the right to

11      obtain or maintain various licenses including licenses to

12      practice certain occupations.  Do you understand that?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  Do you understand that if you're not a

15      citizen of the you United States, then by virtue of this

16      conviction you could be removed from the United States, denied

17      citizenship in the future and denied readmission into the

18      United States in the future?  You understand all of that?

19              MR. HOWARTH:  If -- you are a citizen, but if you

20      weren't a citizen.

21              THE DEFENDANT:  Oh, yes, your Honor.

22              THE COURT:  By pleading guilty, you're giving up all

23      the rights that you would have at a trial, so I'm going to go

24      over those rights that you're giving up.

25              First, you do have the right to plead not guilty and
```

1    to maintain a not guilty plea throughout these proceedings.  Do

2    you understand that?

3         THE DEFENDANT:  Yes, your Honor.

4         THE COURT:  If you pled not guilty, you'd be entitled

5    to have a jury trial.  Do you understand that?

6         THE DEFENDANT:  Yes, your Honor.

7         THE COURT:  If we had a jury trial, we would select

8    12 members of the community.  They would listen to all the

9    evidence and then they would be the ones to decide whether or

10   not the government had proven its case against you beyond a

11   reasonable doubt.  Do you understand that?

12        THE DEFENDANT:  Yes, your Honor.

13        THE COURT:  At trial you would be presumed innocent.

14   You would have no burden whatsoever.  The only burden would be

15   on the government and its burden would be to prove you guilty

16   beyond a reasonable doubt.  Do you understand that?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  At trial and at every other stage of this

19   criminal proceeding, you have the right to an attorney and if

20   you could not afford one, I would appoint one for you.  Do you

21   understand that?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  At trial you'd have the right to see and

24   hear all the witnesses against you.  You would have the right

25   to testify if you wanted to.  You would have the right not to

```
 1    testify if you cannot want to.  You'd have the right to call

 2    witnesses if you wanted to and if those witnesses would not

 3    come into court voluntarily, then you could use the Court's

 4    subpoena powers to force those witnesses to come into court.

 5    Do you understand that?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Do you understand that if you decided not

 8    to testify or put on any witnesses or put on any evidence, that

 9    those facts could not be used against you?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Do you understand that by pleading

12    guilty, if I accept your guilty plea, there will be no trial of

13    any kind?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Do you understand that you will have

16    given up all those rights that I've just listed for you?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Are there any other questions either

19    attorney wants me to put to Mr. Lee before I ask him how he

20    wishes to plead?

21              MR. O'BRIEN:  Not on behalf of the government.  Thank

22    you, Judge.

23              MR. HOWARTH:  None by the defense, your Honor.  Thank

24    you.

25              THE COURT:  All right.  Mr. Lee, I'm going to ask you
```

```
 1    now how you wish to plea to count one of the second-superseding
 2    indictment which charges you with conspiracy to possess with
 3    intent to distribute and distribute controlled substances;
 4    guilty or not guilty?
 5              THE DEFENDANT:  Guilty.
 6              THE COURT:  Are you pleading guilty because you
 7    believe you are guilty?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  All right.  Based on the defendant's
10    testimony here in open court, I do find that he is fully
11    competent and capable of entering an informed plea, that he's
12    aware of the nature of the charge and the consequences of the
13    plea.  I find that his guilty plea is knowingly made and
14    voluntarily made and that it is supported by an independent
15    basis in fact containing each of the essential elements of the
16    offense.  I therefore accept his guilty plea, adjudge him
17    guilty of count one of the second-superseding indictment,
18    conspiracy to possess with intent to distribute and distribute
19    controlled substances in violation of 21 U.S.C., sections 841
20    and 846.
21              I'm going to take the Rule 11 Plea Agreement under
22    advisement.  I'm going to order that a presentence
23    investigation report be prepared.  Defendant and his counsel
24    will have input into the report.  We will now set a sentencing
25    date.
```

1          THE CLERK OF THE COURT:  May 5th at 2:00 p.m.

2          THE COURT:  Does that work for everybody?

3          MR. HOWARTH:  Your Honor, usually I'm not called for

4    that far in advance, but I 90 percent, 99 percent certain that

5    I have a jury trial in federal district court, umm, I'm trying

6    to think of the judge right now, umm --

7          THE COURT:  You want to check your phone?

8          MR. HOWARTH:  No, I know that it's May 5th.

9          THE COURT:  Oh, you know it's May 5th, okay.

10          MR. HOWARTH:  I know it's May 5th.  I'm having a

11    mental freeze and the Judge, but it is -- it is Judge Friedman.

12          THE COURT:  You want to do it before then?

13          MR. HOWARTH:  Even the day before or the day after --

14    I mean, not the day after, but any time before that.  This will

15    not --

16          THE CLERK OF THE COURT:  We can do May 4th at 3:00.

17          MR. HOWARTH:  That's fine.

18          MR. O'BRIEN:  Fine, thank you.

19          MR. MCDONALD:  That works for the government.

20          THE COURT:  Okay.  That will be our sentencing date

21    and time, May 4?  That work for the government; yes?

22          MR. O'BRIEN:  It does.  Thank you, your Honor.

23          THE COURT:  Thank you.

24          (Hearing concluded at 12:00 p.m.)

25                    --    ---    --

<u>C E R T I F I C A T E</u>

I, David B. Yarbrough, Official Court Reporter, do hereby certify that the foregoing pages comprise a true and accurate transcript of the proceedings taken by me in this matter on Friday, January 31st, 2020.


<u>5/27/2021</u>                    <u>/s/ David B. Yarbrough</u>

Date                           David B. Yarbrough,
                               (CSR, RPR, FCRR, RMR)
                               231 W. Lafayette Blvd.
                               Detroit, MI  48226